RICHARD T. FORMAN, administrator of Eliza Forman (*née* Cope),

*v.*

GEORGIANA MANLEY et al.

1. In a suit for foreclosure by mortgagee against mortgagor and his grantee who had assumed the mortgage debt, the bill set out the conveyance from mortgagor to grantee, omitting the clause of assumption but praying a decree

for deficiency against both mortgagor and grantee. Both were served with process and notice of the prayer for decree for deficiency. No defence was made and such decree was duly made against both.

2. A deficiency arose on the sale, which the mortgagor paid and took an assignment of the decree. After a lapse of seventeen years, he moved to amend the bill by inserting the clause of assumption and for execution against the grantee.—*Held*, in the absence of any proof that the grantee had relied on the defect in the bill, or would be prejudiced thereby, that such amendment should be made.

In foreclosure. On motion to issue execution on decree for deficiency.

On the 30th of October, 1872, John J. Mickle, being the owner of certain premises situate in the county of Monmouth, mortgaged them to Eliza H. Cope to secure the sum of $2,000 in one year, with interest. Subsequently, on the 24th of February, 1874, Mickle, together with his wife, conveyed the mortgaged premises to Georgiana Manley in consideration of the sum of $4,500. This deed contained the following clause:

"The above-described lots and parcels of land being sold by the said party of the first part to the said party of the second part, subject to a certain mortgage dated the thirty-first day of October, 1872, given to Eliza Cope, conditioned for the payment of the full sum of two thousand dollars in one year after date, and which the said party of the second part hereby assumes the payment of as part of the purchase-money of said and described lots and interest at seven per cent. from the first day of April, 1874."

Subsequently, on September 18th, 1876, a bill to foreclose this mortgage was filed by the complainant herein, who acquired title to it as administrator of his deceased wife, the said Eliza Cope. That bill set out the bond and mortgage in the usual manner, and also, with more than usual fullness, the conveyance of the premises by Mickle, the mortgagor, to Georgiana Manley, by deed duly executed, acknowledged and recorded, but did not contain any allegation that Mrs. Manley had assumed the payment of the mortgage in the conveyance to her. The prayer, in addition to the ordinary prayer for payment or foreclosure, contained this clause:

"And especially that if the proceeds of the sale of said premises, in your orators' said mortgage described, shall not be sufficient to pay and satisfy to your orators all the moneys due to your orators upon the said bond and the said indenture of mortgage, that the said Georgiana Manley and John J. Mickle may be decreed by the decree of this honorable court to pay the deficiency."

Mrs. Manley and John J. Mickle were both made parties to the bill, and separate subpœnas were issued against them severally, the one addressed to Mickle being sent to the sheriff of Monmouth, where he resided, and the one addressed to Mrs. Manley being sent to the sheriff of Middlesex, where she resided at the time, and to each subpœna was annexed this notice :

"Take notice that the above-named complainant has prayed in his bill of complaint filed in the above-stated cause, that you and others therein named may be decreed to pay any excess of the mortgage debt, in the said bill mentioned, and costs of suit, above the net proceeds of the sale of the mortgaged premises described in said bill." [Signed by the solicitor of complainant.]

The one annexed to the subpœna addressed to Mrs. Manley was addressed to her, and the one annexed to the subpœna addressed to Mickle was addressed to him. These subpœnas were returned by the sheriffs duly served.

No defence was made by either of the defendants.

In pursuance of these proceedings an ordinary decree of foreclosure and for the sale of the premises was made on the 20th of December, 1876, which contained this clause : "And in case the proceeds of such sale shall be insufficient to satisfy and discharge the said mortgage debt, then it is hereby further ordered, adjudged and decreed that said deficiency shall be made of the lands and tenements, goods and chattels of the said defendants, Georgiana Manley and John J. Mickle, as specifically prayed in the bill of complaint filed in this cause. It appearing to the court that notice that such relief was sought by said bill, has been duly served and given to said defendants according to law and the rules and practices of this court, and that a writ of *fieri facias* therefor do issue accordingly out of this court against said defendants for that purpose, payment of the said deficiency being hereby decreed to be made by them, the said defendants,

and that the sheriff make return to this court of his proceedings by virtue of the said writ."

The *fieri facias* for the sale of the mortgaged premises was issued to the sheriff of Monmouth county, and he made sale thereof, and by his return showed a deficiency of $697.01.

Upon that return the chancellor, on the 24th of July, 1877, ordered that an execution issue against the defendants, Manley and Mickle, to make that sum, with interest. An execution was issued accordingly to the sheriff of Monmouth county, endorsed that Georgiana Manley was primarily liable and John J. Mickle secondarily liable. By virtue of that execution, the sheriff levied on a quantity of personal property belonging to Mickle, which he returned with a levy annexed.

Subsequently Mickle paid the amount to the complainant and took an assignment of the decree. He now moves for an execution against Mrs. Manley, upon notice to her, to which notice is annexed a certified copy of the deed containing the clause of assumption by her. The notice also provides for a motion to amend the bill by inserting the language of the assumption in the deed from Mickle to Manley.

This motion is resisted by Mrs. Manley, on the ground that the bill does not contain any ground upon which the court could support a decree, and is therefore void as against her under the doctrine of *Mundy* v. *Vail, 5 Vr. 418,* and the line of cases of which that is the leader.

In her affidavit she does not deny being served with process and with notice that the decree of deficiency was asked for, but simply says she was not aware there was any decree for deficiency taken against her, or that there was anything in the nature of a judgment against her, and she does not deny that she knew that the deed from Mickle to her contained the clause of assumption above set forth, nor does she allege that it was executed by her through inadvertence, or that the clause of assumption did not express the actual contract between the parties, or that she personally or by another examined the bill of complaint, and, finding no allegation of fact which affected her, relied upon such defect and abstained from making any defence.

*Mr. Halsted H. Wainright,* for the motion.

*Mr. Freeman Woodbridge, contra.*

PITNEY, V. C.

The case presented differs from both *Mundy* v. *Vail, 5 Vr. 418,* and *Reynolds* v. *Stockton, 16 Stew. Eq. 211, 140 U. S. 254,* in that here the decree sought to be enforced is directly in accordance with the object, frame and prayer of the bill. It is "responsive to the issues tendered by the bill," and "is not aside of the issue raised in the record." Of the nature and extent of the demand made upon her, the defendant Mrs. Manley had full and timely notice, and she made no defence. In fact, it affirmatively appears upon the case as now presented, that she had none upon the merits. That the complainant had a right in equity to the relief prayed for upon the facts as they actually existed, is not disputed. The sole reason urged why the decree as made should not stand against Mrs. Manley, is that the complainant's solicitor, doubtless through an oversight of the clerk who prepared the bill, failed to set out the central fact upon which such liability rested.

It seems to me that, notwithstanding the distinction pointed out between this case and *Mundy* v. *Vail* and *Reynolds* v. *Stockton,* the decree must be considered, for present purposes at least, as unwarranted as against Mrs. Manley. I am unable to see upon what principle it can be sustained, and such appears to have been the opinion of Vice-Chancellor Van Fleet in *Consolidated Electric Storage Co.* v. *The Atlantic Trust Co., 5 Dick. Ch. Rep. 93.* The discussion in that case leaves nothing to be said upon the subject.

Notwithstanding this radical defect, the circumstance that the decree was actually made by a court of competent jurisdiction, upon notice to the party affected, and that it has stood unchallenged all these years, cannot be overlooked. To meet the difficulty of asking a court to issue execution on an unwarranted decree, the complainant moves to open the enrollment and amend the bill. The power and duty of the court to do this in

a proper case is not disputed.    But Mrs. Manley makes several objections to the exercise of such power in this case.

First, she points out the great lapse of time and her ignorance that the decree had been made against her.

Upon reflection, I am unable to see how such objection can avail her.   She had full notice that such a decree would be asked for, and she is fairly chargeable with the consciousness that she was liable, upon the admitted facts, to be subjected to it.   She made no examination of the bill on file, and did not, so far as appears, rely upon the absence in it of the necessary allegation.   She is justly chargeable with notice of the character of the decree made.    Such is the rule in all cases where a party is regularly brought into court by personal service of process, and thereby has actual knowledge of the proceedings.   She had no right to act upon the notion that no such decree had been made.   Moreover, it does not appear that she has since, in anywise, shaped her conduct or altered her position, one way or the other, upon the strength of her supposition that no decree had been made against her.   Under these circumstances, I do not see how she is injured by the delay.   She is quite as much responsible for it as is the complainant.   He knew that he had a decree against both Mrs. Manley and Mr. Mickle, and it is fair to presume that he supposed that it was founded upon a proper allegation of the assumption contained in the deed from Mickle to Mrs. Manley.   That such assumption should have been duly set out in the bill was as much a matter of course as that the bond and mortgage should have been so set out, and the complainant is no more chargeable with knowledge of the defect than is Mrs. Manley.   They both stand in the same position in that respect.

It seems to me, then, that the complainant is entitled to the aid of the court in the way of an amendment.   Such action on the part of the court is simply to do what is usual and proper in order to promote justice.

But the defendant makes the further point that the complainant's equity has been satisfied; that Mickle, whose bond the complainant held, and against whom he had a decree for the

deficiency, has paid that deficiency, and hence the complainant has no further equity against Mrs. Manley, and that the equity to have the bill amended in the way proposed could not be assigned to Mickle, because, in paying the amount of the deficiency to the·complainant, he simply discharged his own debt. She says that the right of Mickle against her is a legal one, which he might enforce at law. *Finley* v. *Simpson, 2 Zab. 311.*

The point is thus stated in the brief:

" The interest assigned to Mickle was a purely equitable one, given only by a court of equity to a mortgagee against a grantee, for the purpose of convenience and the saving circuity of litigation, and that as soon as that equitable remedy, whether it be the mere right or the decree itself, becomes satisfied as to the complainant and comes into the hands of the grantor, the equitable right becomes absorbed in the legal one, and he must resort to his action on the covenant. The court is here asked to give an equitable remedy, both by amendment and execution, to one whose legal right fully and completely appears."

Mrs. Manley's liability to complainant was based upon the ground, quite familiar in late days, that, as between Mickle and Mrs. Manley, the latter should pay the debt to the complainant, and that Mickle stood in the position of surety for Mrs. Manley to the complainant, and hence the obligation of Mrs. Manley to Mickle to relieve him of the burden of the debt was a " collateral obligation," to which the complainant, as creditor-at-law of Mickle, was entitled. *Klapworth* v. *Dressler, 2 Beas. 62.* Now, that obligation, on the case shown, still exists. Mrs. Manley is still bound to indemnify Mr. Mickle against that obligation, and when he paid the deficiency to the complainant he paid Mrs. Manley's debt as her surety, and upon the very principle upon which Mrs. Manley was liable to the complainant, he (Mickle), upon such payment, was entitled to be subrogated to the rights of the complainant against Mrs. Manley. A surety for the debt of another, who pays that debt, is entitled to be subrogated to all the rights of the creditor against the principal debtor. The precise right of the complainant against Mrs. Manley, when Mickle paid the debt, was to have the bill so amended as to justify the decree which he held against her. To

that right Mickle was subrogated, and I am unable to see why he does not stand precisely in the complainant's shoes in that respect. The execution which issued against Mickle informed him that the decree for deficiency had been entered against Mrs. Manley as well as himself, and that she was primarily liable thereon. He, of course, must have been advised that his payment of the amount due to the complainant subrogated him to the rights of the complainant, independent of the assignment which he procured, and he was fairly entitled to rest upon the idea that he was the owner of a valid decree against Mrs. Manley, precisely as the complainant had been. The injustice of turning him, at this late day, over to his legal remedy, is manifest when we consider that probably the statute of limitations would be a bar to such remedy.

The case of *Jarman* v. *Wiswall, 9 C. E. Gr. 267*, was relied upon by defendant's counsel on this part of his case. There, motion was made to amend a decree of foreclosure by adding a clause holding liable the party who had assigned it to the complainant with guaranty, to make up the deficiency which had occurred upon a sale of the mortgaged premises. Chancellor Runyon refused the motion on the special circumstances of that case, alleging, as one reason, that the complainant had a remedy at law against the defendant moved against. The attitude of the parties towards each other in that case was in marked contrast with the attitude of the parties here. There, the party moved against was the surety, and occupied the precise position which Mickle does here, and he was directly liable to the complainant in an action at law upon his guaranty. The principle that a surety who pays the debt is entitled to be subrogated to all the rights of the creditor, had no application.

I will advise a decree that the complainant have leave to amend the bill in the manner asked for, and that the defendant Mrs. Manley have twenty days after service upon her of a copy of the bill as amended, to answer the same, and in default of answer, Mickle may take an order for an execution against her, with costs.