ALBERT DATZ and ANNA DATZ, his wife, complainants,

*v.*

WILLIAM J. BARRY et al., defendants.

[Decided August 21st, 1934.]

*Messrs. Hudspeth & Harris,* for the complainants.

*Messrs. Insley, Vreeland & Decker,* for the defendants.

EGAN, V. C.

On January 30th, 1924, the complainants conveyed the premises described in the bill to the defendants, William J. and Margaret Barry, husband and wife. As a part of the consideration for the deed, they received from the grantees a mortgage for $5,000, which, subsequently, was reduced to $4,000. The bill seeks the foreclosure of this mortgage. On June 27th, 1924, the Barrys conveyed the premises to Ksienia Onufrow; the deed of conveyance reciting, among other things, "subject to a third mortgage held by Albert and Anna C. Datz, in the sum of five thousand dollars, and which is due July 30th, 1927." The purchase price agreed between the Barrys and Ksienia Onufrow was $25,650; Ksienia Onufrow deducted therefrom $5,112.50 as an allowance for the Datz mortgage; but that mortgage she did not pay or satisfy. On January 18th, 1928, the Datzes and Ksienia Onufrow executed an agreement extending the time for the payment

of the mortgage to January 30th, 1933. This agreement, among other things recites the following: "The party of the second part [Ksienia Onufrow]—to pay the said principal sum and interest as above set forth and to comply with the other terms and conditions of the said bond and mortgage." Ksienia Onufrow conveyed the premises, but, subsequently, reacquired the title. On August 23d, 1932, by deed of that date, Ksienia Onufrow and her husband, Luka Onufrow, conveyed the property to Arthur F. Fuller. The deed to Fuller contains this recital: "Subject to all mortgages, taxes, liens of record and otherwise from which the parties of the second part agree to save the parties of the first part harmless."

The testimony of Barry, *inter alia,* is that a few days after the conveyance of the title from him and his wife to Mrs. Onufrow, he and Luka Onufrow, the husband of Ksienia, visited the complainant, Albert Datz, at his home, and Barry there told Datz that Onufrow "was the new owner and would assume the mortgage;" that Datz then "shook hands with Onufrow" and said Onufrow would or should thereafter pay him the interest. Luka Onufrow testified that the said conversation did not take place at Datz' home, but at 2309 Boulevard; and that Barry said to Datz: "My wife [Ksienia Onufrow] own property and we take care of everything." The witness Luka Onufrow spoke English imperfectly. Datz denied the alleged conversation between him, Barry and Onufrow. Datz' testimony, however, was not clear, satisfactory, or convincing. *Riehl* v. *Riehl, 101 N. J. Eq. 15; 137 Atl. Rep. 787.* His attitude on the witness stand obviously annoyed, or perplexed, his counsel; his answers, in many instances, were not responsive; they were not prompt, but noticeably hesitant and his general conduct was not conducive to a favorable impression.

The contention of the Barrys is that Fuller, the owner of record, is not the real owner; that he is a mere "dummy," agent, or convenient titleholder for the complainants, who are alleged to be the owners in fact. The evidence is clear, and it is admitted by the complainants, that they paid, or provided the sum of $300 which was given to the Onufrows for their deed to Fuller. Fuller is a nephew of the Datzes.

The Datzes, by their testimony, leave no doubt about the situation. Albert Datz said he wanted to relieve Onufrow from any liability on, or under, the bond and mortgage; and, also, that he wanted to hold Barry, or the Barrys, liable under those instruments. Mr. Justice Case, who wrote the opinion in the appeal heretofore instituted in this matter for the court of errors and appeals, reported in *Datz* v. *Barry, 115 N. J. Eq. 84; 169 Atl. Rep. 685,* said:

"They [the affidavits of the complainants] disclose that Fuller holds as the nominee of, and dummy for, the complainants who, for their own purposes, procured, for the consideration of $300 paid by them to Onufrow, a conveyance of the lands from the latter to Fuller.

"The promise to save harmless made on Datz' behalf is without satisfying explanation."

Datz engaged Philip Sauer, his attorney, to attend to the matters incidental to the conveyance of the title from the Onufrows to Fuller. Alfred Becker, an attorney, testified that at a meeting in Sauer's office, Datz wanted Barry to accept back a deed from Onufrow; and that he, Becker, then told Datz that Onufrow, at the time of the said conveyance from the Barrys, verbally assumed the payment of the mortgage and had retained the amount thereof from the purchase price. Datz denied that such conversation took place; but he admitted the meeting with Becker in Sauer's office. Certainly, the assumption of a mortgage indebtedness upon the land conveyed, as part of the consideration of the conveyance, is valid and enforceable, notwithstanding the agreement be by parol. *Dieckman* v. *Walser, 114 N. J. Eq. 382; 168 Atl. Rep. 582;* and when the "purchaser * * * deducts or retains out of the purchase price the amount of the mortgage debt, equity will impose upon his conscience an obligation to indemnify his grantor, if the latter himself be personally liable for the mortgage debt, and this although the premises were conveyed subject to the mortgage." *Fiedler Corp.* v. *Peak Realty Co., 114 N. J. Eq. 535; 169 Atl. Rep. 169; Binns* v. *Baumgartner, 105 N. J. Eq. 58; 146 Atl. Rep. 879.* The evidence of knowledge by Datz of the assumption of the Barry mortgage has, in my opinion, been clearly established and the

execution of the agreement to extend the time of payment of the mortgage by the Onufrows and Datzes is undisputed; therefore, the ruling laid down in *Delacroix* v. *Stanley, 113 N. J. Eq. 121; 165 Atl. Rep. 882,* applies to the instant case; there, the court said: "If a mortgagee with notice or knowledge of the conveyance and assumption by the grantee of the mortgage debt, extends the time of payment of the mortgage by a valid agreement between him and the grantee, such extension agreement *ipso facto* operates to discharge the original mortgagor, unless same has been assented to by the latter." *Reeves* v. *Cordes, 108 N. J. Eq. 469; 155 Atl. Rep. 547.* There is no evidence to the effect that the Barrys assented to the extension. Mr. Justice Case, speaking for the court of errors and appeals in *Datz* v. *Barry, supra,* said: "From what was Onufrow to be saved harmless? Not from the mortgage itself because that was a burden only upon the lands and the lands were not conveyed; not from the strict wording of the bond, for that instrument was in the hands of the complainants and did not mention Onufrow. From what, then, other than an assumption of the debt which the mortgage was given to secure?" The facts in this case conclusively indicate that the said recital was to relieve Onufrow from the debt which the mortgage was given to secure. There is no doubt in my mind that Datz, through his agent and nominee, Fuller, agreed to assume the payment of the mortgage debt as a part consideration for the conveyance from Onufrow to Fuller; and, under the circumstances, equity considers the debt satisfied; therefore, since the debt is regarded as being satisfied, there is no existing mortgage to foreclose. *Mann* v. *Bugbee, 113 N. J. Eq. 434; 167 Atl. Rep. 202.*

I shall advise a decree dismissing the bill against the defendants, the Barrys.